IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LESLIE DENIAR MOLLETT,** : | CIVIL ACTION NO. 1:23-CV-2084 |
| : | |
| **Plaintiff** : | (Judge Conner) |
| : | |
| v. : | |
| : | |
| **PENNSYLVANIA DEPARTMENT** : | |
| **OF CORRECTIONS,** *et al.*, : | |
| : | |
| **Defendants** : | |

### MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Leslie Deniar Mollett, alleges that defendants were deliberately indifferent to a substantial risk of serious harm that he would be exposed to COVID-19, and that they subjected him to cruel and unusual punishment by keeping him handcuffed and refusing to let him use the bathroom for several hours. The case is before the court on Mollett's amended complaint. We have screened the amended complaint pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A and will dismiss it without further leave to amend except to the extent that it asserts a cruel and unusual punishment claim against defendants Wynder and Simpson.

I.  **Factual Background & Procedural History**

Mollett filed his original complaint on December 7, 2023, and the court received and docketed the complaint on December 15, 2023. (Doc. 1). The court dismissed the complaint without prejudice on January 22, 2024 and granted Mollett leave to file an amended complaint. (Docs. 7-8). Mollett then filed a motion for leave to amend on February 27, 2024, along with a proposed amended complaint.

(Docs. 9, 9-1). Because Mollett had already been granted leave to amend the complaint and filed his motion for leave to amend before the deadline to file an amended complaint, we will grant the motion, docket the amended complaint, and proceed to our mandatory screening of the amended complaint pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A.

According to the amended complaint, Mollett was incarcerated in Frackville State Correctional Institution ("SCI-Frackville") on December 29, 2021, at 11:30 a.m., when several officers entered his housing block and removed him, his cellmate, and inmates from nine other cells to conduct a random search. (Id. at 3). The officers had dogs with them, who were directed to sniff the inmates' "back sides and private areas." (Id.)

Mollett and his cellmate were allegedly escorted from their cell for the search team to perform an x-ray to check for the presence of drugs or contraband. (Id.) The x-ray was negative. (Id.) The search team returned Mollett and the cellmate to their cell. (Id.) Mollett purportedly told defendant Simpson, a lieutenant accompanying the search team, that he had a "bladder issue" and asked if he could use the bathroom. (Id.) Simpson informed him that his cell would be the first one searched. (Id.) Mollett again asked to use the bathroom, but Simpson allegedly ignored the request. (Id.)

Mollett and his cellmate were then escorted to the back of the housing unit and placed on benches while handcuffed behind their backs. (Id.) Mollett asked whether he could have the handcuffs removed while he sat on the bench, but Simpson denied the request. (Id.) Mollett then informed Simpson that he had

2

diabetes and that the cuffs were tight on his wrists and making his fingers feel numb. (Id.) Simpson purportedly ignored Mollett. (Id.)

The officers on the search team allegedly did not wear face masks while searching the housing block. (Id. at 4). Mollett and several other inmates on the block expressed their concern about this practice to defendant Wynder, a deputy escorting the search team, because the housing unit was reserved for inmates who were not vaccinated against COVID-19. (Id.) The failure to wear masks purportedly violated the Pennsylvania Department of Corrections' COVID-19 policies. (Id.)

Mollett allegedly informed Wynder that he had diabetes and asked him if his handcuffs could be loosened. (Id.) Wynder supposedly ignored the request. (Id.) The amended complaint avers that Mollett is a "known diabetic" and that the handcuffs were causing his wrist to swell. (Id.) Mollett then asked officer Boyer, a member of the search team who is not named as a defendant, whether his handcuffs could be loosened and whether he could use the bathroom. (Id.) The complaint alleges that Mollett "needed to see medical" at this time because his blood sugar was "dropping." (Id.) He began to feel dizzy and sweaty. (Id.) Mollett told an officer on the search team that he did not feel well, but the officer purportedly ignored him. (Id.)

The amended complaint asserts that Mollett's cell was the last one on the block to be searched. (Id.) Around the time the cell was searched, Mollett allegedly told an officer on the search team that he was in "agony of pain," that his body felt "funny," and that he could not feel his hands, wrists, or forearms. (Id.) Officers

3

helped Mollett stand up, at which point he told them that his blood sugar was "funny." (Id.) One of the officers observed that Mollett's hands were red and swollen and immediately removed Mollett's handcuffs. (Id.) The officer called for assistance. (Id.) Mollett stumbled "towards the back steps" because he was feeling dizzy. (Id.) Officers assisted him up the stairs to his cell. (Id.) As he was going up the stairs, Mollett allegedly urinated on himself. (Id.) Mollett's blood sugar was tested at this time and showed a result of "68." (Id.) The amended complaint avers that Mollett's blood sugar is "never that low." (Id.)

The amended complaint alleges that Mollett and "95% of the inmates" in Mollett's housing unit caught COVID-19 within two or three days after the search. (Id. at 5). Mollett acknowledges that he was not vaccinated against COVID-19 at this time, but asserts that he and the other inmates had "freedom of choice to not take a vaccine shot in our bodies, no matter what the health concerns may be." (Id.) The amended complaint asserts that because he was unvaccinated, prison officials should have protected him from COVID-19. (Id.) The amended complaint asserts claims for violations of the Eighth Amendment and violations of Mollett's Fourth Amendment right to "freedom of choice." (Id.) Mollett seeks compensatory and punitive damages.

## II.  Legal Standard

The Prison Litigation Reform Act authorizes a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity. See 28 U.S.C. §

1915(e)(2);[1] 28 U.S.C. § 1915A.[2]  The court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

### III.   Discussion

Mollett brings his constitutional claims under 42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  42 U.S.C. § 1983.  The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law.

---

[1] 28 U.S.C. § 1915(e)(2) provides:

**(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
  **(A)** the allegation of poverty is untrue; or
  **(B)** the action or appeal—
    **(i)** is frivolous or malicious;
    **(ii)** fails to state a claim on which relief may be granted; or
    **(iii)** seeks monetary relief against a defendant who is immune from such relief.

[2] 28 U.S.C. § 1915A provides:

**(a) Screening.**--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
**(b) Grounds for dismissal.**--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
  **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
  **(2)** seeks monetary relief from a defendant who is immune from such relief.

See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

We liberally construe the complaint as advancing two claims for relief: (1) that defendants' failure to require members of the search team to wear face masks constituted deliberate indifference to the risk that Mollett would be exposed to COVID-19 and violated his right to refuse vaccination; and (2) that defendants' refusal to remove or loosen Mollett's handcuffs and refusal to allow him to use the bathroom for several hours constituted cruel and unusual punishment.[3]

Claims of deliberate indifference require a plaintiff to allege (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that risk; and (3) the defendant's deliberate indifference caused the plaintiff harm. Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)), *abrogated in nonrelevant part as recognized by* Mack v. Yost, 968 F.3d 311, 319 n.7 (3d Cir. 2020). The first element is an objective inquiry of whether the official "knowingly and unreasonably disregarded an objectively intolerable risk of harm." Beers-Capitol v.

---

[3] Mollett's original complaint advanced a claim that defendants were deliberately indifferent to a serious medical need by failing to provide him medical care for his drop in blood sugar, but the amended complaint does not appear to assert any claims based on Mollett's medical care. (See Doc. 9-1). It is not alleged that Mollett needed medical care during the events at issue in the amended complaint. (See id.)

Wetzel, 256 F.3d 120, 132 (3d Cir. 2001).  The second element is subjective: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."  Bistrian, 696 F.3d at 367 (quoting Beers-Capitol, 256 F.3d at 125).

Mollett's choice to forego vaccination against COVID-19 dooms his deliberate indifference claim.  Simply put, Mollett "cannot refuse a vaccine that would largely ensure his protection from COVID-19 and then allege that prison officials are failing to ensure his protection from COVID-19."  Ali, 2021 WL 5003406, at *3; cf. Garrett v. Murphy, 17 F.4th 419, 433 (3d Cir. 2021) (rejecting claim that COVID-19 placed plaintiff in immediate danger of physical harm because "effective COVID-19 vaccines are widely available").

Mollett asserts that his decision to forego vaccination against COVID-19 is protected by his "freedom of choice."  (Doc. 9-1 at 5).  But freedom of choice does not free a person from the consequences of his choices.  The DOC has offered Mollett an effective means of protecting him from COVID-19, and Mollett has refused it.  The Eighth Amendment does not require defendants to protect Mollett from COVID-19 in the exact manner that he chooses.  Cf., e.g., Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (holding that "mere disagreement" as to proper medical treatment does not support a claim for deliberate indifference under the Eighth Amendment).

We find that Mollett has adequately stated a cruel and unusual punishment claim upon which relief may be granted based on the use of handcuffs and denial of bathroom use for several hours during the search of his housing block.  The

amended complaint avers that Mollett repeatedly told the officers conducting the search that the handcuffs were causing him significant pain and swelling and repeatedly told the officers that he needed to use the bathroom but that the officers ignored his entreaties, eventually causing Mollett to urinate on himself before he could get to a bathroom. (Doc. 9-1 at 3-4). Assuming the truth of these allegations, as we must at this stage of litigation, we find that Mollett has stated a cruel and unusual punishment claim upon which relief may be granted.

The cruel and unusual punishment claim will only be allowed to proceed against defendants Wynder and Simpson, however, because Mollett has failed to allege the personal involvement of any other defendants. A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. Id. There is no allegation that any defendants other than Wynder and Simpson were aware that Mollett was in pain from the handcuffs or that he needed to use the bathroom during the search. Instead, the claims against the other defendants are based exclusively on their supervisory roles in the prison, which is not a sufficient basis to allege personal involvement. See id.

Before dismissing a civil rights claim for failure to state a claim upon which relief may be granted, district courts must permit a curative amendment unless the

amendment would be inequitable or futile.  Phillips v. Allegheny Cty., 515 F.3d 224, 245 (3d Cir. 2008).  We find that further leave to amend would be futile as to Mollett's dismissed claim arising from his exposure to COVID-19.  Mollett has had multiple opportunities to assert this claim and has repeatedly failed to do so in a manner that would allow the court to grant relief on the claim.

### IV.   Conclusion

We will dismiss Mollett's deliberate indifference claim without further leave to amend pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted.  The case will proceed solely as to Mollett's cruel and unusual punishment claim against defendants Wynder and Simpson, who will be served with the amended complaint.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     March 22, 2024